ANNA STARK, Appellee, v. ALLIE BURKE and T. C. TAYLOR, Appellants.

**Admission of secondary evidence.** The admission of secondary
1 evidence of the contents of a writing prior to a showing of
inability to produce the original is not prejudicial error, where
the party claimed to have possession of the same is subse-
quently examined as a witness and denies possession or knowl-
edge thereof.

**Examination of witnesses:** LEADING QUESTIONS. In proving the
2 contents of a lost writing it is permissible to call the atten-
tion of the witness to matters the writing is claimed to have
embodied and ask for his recollection in respect thereto.

**Evidence:** IMPEACHMENT. Where a party has made statements
3 out of court as to the contents of a writing, which is the
basis of the action, at variance with his sworn version of the
writing, such statements are material and admissible for the
purpose of impeachment; and an objection that they were not
limited by the court to the question of impeachment cannot
be raised on appeal where no instruction to that effect was
asked.

**Sales:** EVIDENCE. In an action by the assignee of a written contract
4 for the sale of goods to recover the price, it is competent to
show the delivery and the date thereof.

**Instructions.** A requested instruction that assumes a certain writ-
5 ing offered in evidence to be a contract between the parties,
which is a subject of dispute upon the trial, should be re-
fused; also such as are covered by those given by the court
on its own motion.

**Contracts:** PROOF OF EXECUTION: HANDWRITING. The assignee of
6 a written contract in a suit thereon is entitled ordinarily to
have the question of the genuineness of the assignor's signa-
ture to the contract, where the same is in dispute, submitted to
jury although the same is admitted by the assignor as a wit-
ness upon the trial.

*Appeal from Dallas District Court.*— HON. JAMES D.
GAMBLE, Judge.

MONDAY, OCTOBER 22, 1906.

ACTION at law to recover a sum alleged to be due on a
written contract for the sale of a stock of goods. There
was a verdict and judgment for the plaintiff, and defendant
appeals.— *Affirmed.*

*White & Clark* and *Cardell & Fahey,* for appellants.

*McKenzie & Franklin* and *Miller & Russell,* for ap-
pellee.

WEAVER, J.— It is admitted that John Longhenry en-
tered into a written agreement with the defendants whereby
he sold and transferred to them a stock of merchandise, and
in part consideration of such sale the defendants under-
took to invest him with some right or title to a certain
quarter section of land in Oklahoma. The rights of said
Longhenry under said contract of sale have been assigned
to the plaintiff. This litigation involves the question as to
the precise nature and effect of the defendants' undertaking
as to this land. The contract was reduced to writing and left
in the custody of one Rivers, who, as a witness for the de-
fendants, produces and identifies what he claims to be the
very instrument so executed. On the other hand, the plain-
tiff denies the genuineness of the writing so produced and
denies that the sale or exchange was made upon the terms
therein contained. She avers that the agreement was to
the effect that defendants were to convey the land to Long-
henry by a good and sufficient title by September 20, 1902,
and in case of failure so to do would pay to him the sum
of $1,500 in cash. The paper or writing which defendants
say embodies their contract provides in effect that defend-
ants thereby transfer to Longhenry " one relinquishment·

and receipt from the land office given to Mary Burke." The writing then proceeds: " J. Longhenry accepts the above tract of land in the sum of $1,500 toward the payment of the above merchandise. The other only agrees to a straight filing on the piece above described. The said John Longhenry will go on said land and take possession of the same on September 20, 1902." Other parts of the writing are immaterial on this appeal. It is the claim of plaintiff that the writing actually made and signed by the parties thereto was attested by two witnesses, F. B. Rivers and H. M. Stone, while the paper produced by defendant has no subscribing witnesses. It is conceded that defendants have never made any conveyance of the land to Longhenry or his assigns, unless such be the effect of the writing produced in evidence. Defendants do not claim to have ever been able to make title to said Longhenry or his assigns, but say they undertook simply to give to him the advantage of a relinquishment of entry thereon made by a third person.

The issue, therefore, is purely one of fact. Is the instrument brought into court on behalf of defendants the contract made between the parties? If not, then did the defendants agree to make title to the land, and in default thereof to pay Longhenry the sum of $1,500, as claimed by the plaintiff? The testimony upon these propositions is in direct and irreconcilable conflict. The substance of the agreement and the contents of the paper as claimed by the plaintiff and the opposing claims made by the defendants are each upheld by numerous witnesses, all testifying with much positiveness. Under such circumstances the determination of the dispute was clearly and peculiarly a matter for the jury; and, unless the record is found to disclose some manifest error occurring upon the trial, we are not authorized to interfere with the verdict. To uphold the appellant's contention that the verdict is not sufficiently supported by the evidence would be for us to usurp the functions of the jury and pass upon the credibility of the wit-

nesses and the weight and value of their testimony.    This
we are not authorized or willing to do.

Exceptions have been taken to several rulings of the ·
trial court, to which we will briefly advert.    Several wit-
nesses for plaintiff, who claim to have seen and read the
1. ADMISSION OF    written contract signed by Longhenry, were
SECONDARY
EVIDENCE.         permitted to testify to their recollection of
its contents.    This was objected to on the ground that the
possession of the paper had been traced to Rivers, who had
not been called as a witness to produce it.    If there was
error in this ruling, it was without prejudice.    Rivers was
made a witness by defendants and testified that he never
had but one written contract between the parties, that the
paper produced by him was the identical instrument, and
that he never had possession of a paper such as was de-
scribed on part of the plaintiff.    The plaintiff was not re-
quired to put a hostile witness on the stand and produce in
evidence a writing the genuineness of which she denied and
repudiated; and, Rivers having denied the possession or cus-
tody of such a writing as the plaintiff was seeking to prove,
her failure to call him to the stand affords no reasons for
excluding the secondary evidence offered by her as to its
alleged contents.    This holding comes within the spirit of
the rule applied by us in *Leebrick v. Stahle,* 68 Iowa, 515,
and *Bell v. Railroad Co.,* 64 Iowa, 321.

Complaint is made that in examining his witnesses as
to the contents of the alleged missing contract counsel for
plaintiff was permitted to propound questions which were
2. EXAMINATION    leading and suggestive of the answer desired.
OF WITNESS:     The matter of allowing leading questions is so
leading
questions.       much within the control of the trial court that
assignments of error thereon are never upheld in the absence
of a showing of abuse of discretion.    An examination of the
record in the present case discloses no violation of the rule
from which prejudice to the defendants can be inferred.
Few witnesses, no matter how intelligent or honest they may

be, can repeat verbatim the contents of a lost writing which they have seen but once or twice, and it is not improper for counsel to suggest or call attention to the several matters which the instrument is claimed to have embodied, and ask for the recollection of the witness in respect thereto. This liberty should, of course, be so controlled by the court as to avoid any unfair suggestion to the witness of the answer desired by counsel. To effectuate this end no hard and fast invariable rule can be prescribed, but much must depend upon the peculiar circumstances of the particular case on trial: the nature of the contest and of the information sought, the intelligence or want of intelligence, and the willingness or unwillingness of the witness — and all of the surrounding circumstances are to be considered in ruling upon such objections, and the trial court is in the position to determine the propriety of that line of inquiry better than this court can ordinarily do from the printed record.

Upon cross-examination defendant Burke was asked if at a certain time and place and in the presence of persons named he did not say to one Stone that he had agreed to give Longhenry a good title to 160 acres of land in Oklahoma or $1,500 in money, which question he answered in the negative. In rebuttal, Stone was called as a witness for plaintiff and testified that Burke did at the specified time and place make the statement indicated by the question above referred to. The admission of this testimony was said to have been erroneous because it was an attempt to impeach the witness upon an immaterial matter, and because the admission, if made, would not be admissible against his codefendant. We are very clear that the statement inquired about was not immaterial. As a witness for the defendants Burke had testified that the paper produced by Rivers was the contract and the only contract made by himself and Taylor with Longhenry, and explicitly denied having entered into any such agreement as was claimed by the plaintiff. If, then,

3. Evidence: impeachment.

he had made statements out of court utterly at variance with his sworn version of the contract or any statement which by fair construction involved an admission of the truth of the plaintiff's case (and such we think was the effect of the alleged statement put in evidence) its admission in rebuttal was surely proper upon the most familiar rules of evidence as tending to impeach his veracity. Whether its effect as a mere admission should be regarded as evidence against his codefendant we need not here determine. It is enough that the testimony was admissible for any purpose; and, if defendants believed that its application or effect should have been limited to the matter of impeachment alone, an instruction to that effect should have been requested.

The plaintiff was permitted to elicit from some of the witnesses the fact that the stock of goods sold or traded for the Oklahoma land had in fact been delivered to the defendants and the date of such delivery, and upon 4. Sales: this also error is assigned. The testimony evidence. was admissible. It does no more than to show that Long-henry, under whom plaintiff claims by assignment, performed his part of the contract and paid the consideration upon which the alleged agreement of the defendants was based, and this we take it is always relevant in every case where recovery is sought upon contract.

Defendants also requested an instruction to the jury in the following words: " (1) If you find from the evidence that the only written contract entered into between John Longhenry, Allie Burke, and T. C. Taylor 5. Instructions. was the written contract which has been introduced in evidence as Exhibit A, then the plaintiff is not entitled to recover in this case, and you should find for the defendants." To the refusal of this request exception is taken. There was no error in the ruling. In the first place, the instruction asked assumed that the writing referred to was a contract between the defendants and Longhenry, a fact which was the subject of radical dispute upon the trial,

In the next place, it is merely another statement of the self-evident proposition that, if this writing was the contract and the only contract between said parties, then plaintiff was not entitled to recover upon the alleged contract described in her pleadings. This thought or its equivalent is embodied in various forms in the charge given to the jury by the court upon its own motion, and, indeed, it is of such an axiomatic character that even without any instruction from the court it is not conceivable that the jury should have been misled in this respect.

Certain alleged signatures of John Longhenry were shown him on cross-examination by the defendants, and he admitted their genuineness. These signatures were sub-6. CONTRACTS: mitted to the jury for comparison with the proof of execution: alleged signature to the writing produced by hand-writing. Rivers. On this subject the court instructed the jury that, if they found the signatures referred to upon the cross-examination were genuine, they might be used for comparison with the disputed signature, but for no other purpose. Objection is made to this instruction because, it is said, that the genuineness of the signatures was admitted, and such question should therefore not have been left to the jury. It is true that Longhenry admitted the signatures (except the one to the paper offered by the defendants) to be his, but his admission to that effect was not the admission of the plaintiff. While a party may not under some circumstances impeach the veracity of his own witness, he is not ordinarily bound by any statement of fact made by such witness. We conclude, therefore, that plaintiff was entitled to have the fact as to the several signatures submitted, with all other matters material to the controversy and appearing in evidence, to the finding of the jury.

Some other questions are argued by counsel, but those already referred to are all which seem to us material to the disposition of the appeal.

We find no reversible error in the record, and the judgment of the district court is *affirmed.*